TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00664-CR







Coy Ray Doss, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT


NO. CR21,190, HONORABLE EDWARD P. MAGRE, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



Appellant Coy Ray Doss pleaded guilty to possessing more than fifty pounds of
marihuana. See Tex. Health & Safety Code Ann. § 481.121(a), (b)(5) (West 2003). After hearing
evidence, the district court adjudged him guilty and assessed punishment at ten years' imprisonment. 
In his only point of error, appellant contends the court erred by overruling his motion to suppress
evidence. Finding no error, we affirm the conviction.

Appellant and his family live on a fenced thirty-acre parcel of land on Highway 79,
seven miles west of Rockdale. Appellant, his wife, and their younger children occupy one of the
houses on the property, appellant's two older daughters live in a second house, and appellant's two
older sons occupy a third house. On September 21, 2004, members of the Central Texas Narcotics
Task Force found over eight hundred marihuana plants growing on the east side of appellant's
property in a cultivated plot surrounded by trees and brush about three hundred yards from
appellant's residence. Police also found thirty-three boxes of marihuana in appellant's residence,
most of it in a "drying area" on the second floor. Appellant contends that the officers who
discovered the plot of marihuana plants were trespassing and that he did not voluntarily consent to
the search of his residence.

One of the task force members was Deputy Ted Retchloff. Retchloff, a thirty-year
law enforcement officer with sixteen years on the task force, testified that he was told by an informer
in February 2004 that appellant was growing marihuana on his property. Retchloff flew over the
property in a helicopter soon thereafter, but he saw no marihuana. Retchloff continued to receive
information that appellant was growing marihuana, so he arranged for another flyover on the
morning of September 21. Retchloff testified that this time, he saw the marihuana plot on the east
side of appellant's property.

Seven other task force members were working with Retchloff on the ground. Several
of them (the exact number is unclear from the record) drove onto the property through an open gate
while Retchloff was flying overhead, but before he spotted the growing marihuana. Three task force
members, Lieutenant Mike Cowie, Officer John Moseley, and Deputy Frank Hernandez, drove up
the driveway to appellant's residence, where appellant's wife was standing outside to meet them. 
Moseley testified that he identified himself and told her that he and his companions were
investigating reports that marihuana was being grown on the property. Moseley asked Mrs. Doss
"if she wouldn't mind if we looked around the property. She gave her consent." Moseley then asked
her "if she wouldn't mind walking us through the property." She agreed to do this, and began
walking with Moseley and Hernandez toward the west side of the property where the marihuana had
been reported growing.

Cowie testified that he remained at the Doss residence with the task force vehicles. 
"[Q]uite a few minutes" after Moseley and Hernandez left with Mrs. Doss, Retchloff radioed Cowie
from the helicopter to report the discovery of the marihuana plot. Following directions from
Retchloff, Cowie and Investigator Jeff Stoddard began walking east down a dirt path. They
encountered appellant, who emerged from a semi-circle of abandoned mobile homes. Cowie
testified that he identified himself, "explained why we were there, and then advised him that his wife
had given us permission to be on the property." Cowie told appellant that marihuana had been seen
growing on the property and asked him to accompany the officers "to take a look at it." Appellant
agreed to go with the officers. There is no evidence that appellant gave his consent to a search of
his property at this time, but there is also no evidence that he asked the officers to leave.

Cowie estimated that the marihuana patch was "a couple of acres" in size. It was
fenced, well-kept, and had an elaborate irrigation and fertilizer system. Water for the irrigation
system was provided by a water line running from appellant's residence. Electricity for the water
pump came from the residence occupied by appellant's older sons.

After the initial inspection of the growing marihuana plants, Cowie, Stoddard, and
appellant walked back to appellant's residence where the other task force members, now joined by
Retchloff, were gathered outside with the other members of the Doss family. Moseley testified that
he advised the adults of their rights. The older boys gave their written consent to a search of their
residence. Doss also signed a written consent to search his residence. A copy of the consent form
is in the record. It reflects that Doss was told that he was not required to consent to the search and
would not be penalized if he refused to consent. Doss testified, however, that the officers told him
that they "could make it a lot harder on [him]" if he made them wait for a search warrant.

When reviewing a trial court's ruling on a motion to suppress evidence, we defer to
the district court's factual determinations but review de novo the court's application of the law to
the facts. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We will sustain the trial
court's ruling admitting evidence if the ruling is reasonably supported by the record and correct on
any theory of law applicable to the case. Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim. App.
2002). When, as here, the trial court does not make explicit findings of fact, we review the evidence
in the light most favorable to the court's ruling and assume the court made findings that are
supported by the record and buttress its conclusion. Carmouche v. State, 10 S.W.3d 323, 327-28
(Tex. Crim. App. 2000).

We first address appellant's contention that the evidence regarding the marihuana
growing on his property was unlawfully obtained. Appellant does not contend that the aerial
reconnaissance or the warrantless entry onto his property by the officers was a violation of his Fourth
Amendment rights. He argues, however, that Cowie and Stoddard committed a civil--not
criminal--trespass when they walked from the Doss residence to the marihuana field. Thus, he urges
that the evidence was obtained in violation of the law within the meaning of article 38.23(a). 
Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005) (statutory exclusionary rule). Appellant cites
no authority to support his contention that the officers' conduct constituted a common law trespass
under the circumstances shown here. In any event, a civil or common law trespass does not
constitute a violation of the law within the meaning of article 38.23(a). Crowell v. State, 180 S.W.2d
343, 347 (Tex. Crim. App. 1944) (applying predecessor statute); Carroll v. State, 911 S.W.2d
210, 221 (Tex. App.--Austin 1995, no pet.); Delosreyes v. State, 853 S.W.2d 684, 689
(Tex. App.--Houston [1st Dist.] 1993, pet. ref'd). The trial court did not err by refusing to suppress
the evidence that marihuana was growing on appellant's property pursuant to article 38.23(a).

Appellant contends that the warrantless search of his residence violated his Fourth
Amendment rights because his consent to the search was not voluntary. (1) It was the State's burden
to prove the voluntariness of appellant's consent by clear and convincing evidence. Reasor v. State,
12 S.W.3d 813, 818 (Tex. Crim. App. 2000). Whether consent to a search was voluntary is a
question of fact to be determined from the totality of the circumstances. Schneckloth v. Bustamonte,
412 U.S. 218, 227 (1973); Reasor, 12 S.W.3d at 818.

Appellant asserts that several factors undermine the finding that his consent to the
search of his residence was voluntary. First, he urges that the officers falsely told him that his wife
had consented to the search. The evidence shows, however, that Cowie told appellant only that his
wife had given the officers permission to be on the property, a fact that is supported by Moseley's
testimony. There is no evidence that appellant was told that his wife had consented to a search of
their residence.

Appellant asserts that he was told that if he did not consent to the search, the officers
would get a warrant and search anyway. He also claims that he was threatened with harsh
consequences if he did not consent. The only evidence supporting these assertions is appellant's own
testimony, which the trial court was not required to believe. Appellant's claims were rebutted by the
testimony of the officers and by the written consent form.

Appellant contends that his consent was involuntary because he was not told that he
had a right to refuse. Although knowledge of a right to refuse is a factor to be taken into account,
it is not a prerequisite to establishing a voluntary consent. Schneckloth, 412 U.S. at 249. Contrary
to appellant's contention, the evidence reflects that appellant was told that he had a right to refuse 
his consent to the search. By his initials on the consent form, appellant acknowledged that he knew
that he was not required to consent and that he would not be penalized if he did refuse.

Appellant complains of an alleged coercive atmosphere. He asserts that his wife and
children had been "rounded up" by the police, and that he was "surrounded" by at least eight officers
when he was asked to consent to the search of his residence. Appellant concedes, however, that
there is no evidence that the officers brandished their weapons or engaged in any act of physical
force while on his property. Appellant was not handcuffed or otherwise physically restrained when
he gave his consent.

Finally, appellant urges that his consent to the search was tainted by unlawful police
conduct. This is a reference to appellant's initial encounter with Cowie and Stoddard as the officers
were walking toward the marihuana patch. Appellant incorporates his unsupported argument,
discussed above, that the officers were trespassing. Appellant also asserts that he was unlawfully
arrested at this time. Cowie testified that he asked appellant to accompany the officers to look for
the marihuana that had been seen growing on the property. We will assume for the sake of this
opinion that, under the circumstances, this constituted a seizure of appellant's person within the
meaning of the Fourth Amendment. See California v. Hodari D., 499 U.S. 621, 625-26 (1991);
Johnson v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). We believe, however, that this
seizure is best characterized as an investigative detention because appellant was not physically
restrained or taken into custody. See Tex. Code Crim. Proc. Ann. art. 15.22 (West 2005) (defining
arrest). We further believe that the detention was justified by reasonable suspicion: Retchloff
had reported seeing marihuana growing on appellant's property, giving Cowie a reasonable basis for
concluding that appellant was engaged in criminal activity. See Woods v. State, 956 S.W.2d 33,
38 (Tex. Crim. App. 1997) (discussing reasonable suspicion). Appellant challenges the credibility
of Retchloff's claim to have identified the marihuana plants from the air, but that was an issue for
the trial court.

Considering all the circumstances and giving proper deference to the trial court's
determination, we hold that the State proved by clear and convincing evidence that appellant
voluntarily consented to the search of his residence. The trial court did not err by overruling
appellant's motion to suppress on this basis.

The judgment of conviction is affirmed.


 


 __________________________________________

 Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: July 24, 2007

Do Not Publish



 
1. The State argues that appellant failed to preserve this contention for review. It is true that
appellant's primary contention at the hearing below was that the officers were trespassing on his
property. Considering the record as a whole, however, we conclude that the voluntariness of his
consent to the search of his residence was presented to the trial court and preserved for review.