# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00664-CR

**Coy Ray Doss, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT
### NO. CR21,190, HONORABLE EDWARD P. MAGRE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Coy Ray Doss pleaded guilty to possessing more than fifty pounds of marihuana. *See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(5) (West 2003). After hearing evidence, the district court adjudged him guilty and assessed punishment at ten years' imprisonment. In his only point of error, appellant contends the court erred by overruling his motion to suppress evidence. Finding no error, we affirm the conviction.

Appellant and his family live on a fenced thirty-acre parcel of land on Highway 79, seven miles west of Rockdale. Appellant, his wife, and their younger children occupy one of the houses on the property, appellant's two older daughters live in a second house, and appellant's two older sons occupy a third house. On September 21, 2004, members of the Central Texas Narcotics Task Force found over eight hundred marihuana plants growing on the east side of appellant's

property in a cultivated plot surrounded by trees and brush about three hundred yards from appellant's residence. Police also found thirty-three boxes of marihuana in appellant's residence, most of it in a "drying area" on the second floor. Appellant contends that the officers who discovered the plot of marihuana plants were trespassing and that he did not voluntarily consent to the search of his residence.

One of the task force members was Deputy Ted Retchloff. Retchloff, a thirty-year law enforcement officer with sixteen years on the task force, testified that he was told by an informer in February 2004 that appellant was growing marihuana on his property. Retchloff flew over the property in a helicopter soon thereafter, but he saw no marihuana. Retchloff continued to receive information that appellant was growing marihuana, so he arranged for another flyover on the morning of September 21. Retchloff testified that this time, he saw the marihuana plot on the east side of appellant's property.

Seven other task force members were working with Retchloff on the ground. Several of them (the exact number is unclear from the record) drove onto the property through an open gate while Retchloff was flying overhead, but before he spotted the growing marihuana. Three task force members, Lieutenant Mike Cowie, Officer John Moseley, and Deputy Frank Hernandez, drove up the driveway to appellant's residence, where appellant's wife was standing outside to meet them. Moseley testified that he identified himself and told her that he and his companions were investigating reports that marihuana was being grown on the property. Moseley asked Mrs. Doss "if she wouldn't mind if we looked around the property. She gave her consent." Moseley then asked her "if she wouldn't mind walking us through the property." She agreed to do this, and began

2

walking with Moseley and Hernandez toward the west side of the property where the marihuana had been reported growing.

Cowie testified that he remained at the Doss residence with the task force vehicles. "[Q]uite a few minutes" after Moseley and Hernandez left with Mrs. Doss, Retchloff radioed Cowie from the helicopter to report the discovery of the marihuana plot. Following directions from Retchloff, Cowie and Investigator Jeff Stoddard began walking east down a dirt path. They encountered appellant, who emerged from a semi-circle of abandoned mobile homes. Cowie testified that he identified himself, "explained why we were there, and then advised him that his wife had given us permission to be on the property." Cowie told appellant that marihuana had been seen growing on the property and asked him to accompany the officers "to take a look at it." Appellant agreed to go with the officers. There is no evidence that appellant gave his consent to a search of his property at this time, but there is also no evidence that he asked the officers to leave.

Cowie estimated that the marihuana patch was "a couple of acres" in size. It was fenced, well-kept, and had an elaborate irrigation and fertilizer system. Water for the irrigation system was provided by a water line running from appellant's residence. Electricity for the water pump came from the residence occupied by appellant's older sons.

After the initial inspection of the growing marihuana plants, Cowie, Stoddard, and appellant walked back to appellant's residence where the other task force members, now joined by Retchloff, were gathered outside with the other members of the Doss family. Moseley testified that he advised the adults of their rights. The older boys gave their written consent to a search of their residence. Doss also signed a written consent to search his residence. A copy of the consent form

3

is in the record. It reflects that Doss was told that he was not required to consent to the search and would not be penalized if he refused to consent. Doss testified, however, that the officers told him that they "could make it a lot harder on [him]" if he made them wait for a search warrant.

When reviewing a trial court's ruling on a motion to suppress evidence, we defer to the district court's factual determinations but review de novo the court's application of the law to the facts. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We will sustain the trial court's ruling admitting evidence if the ruling is reasonably supported by the record and correct on any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). When, as here, the trial court does not make explicit findings of fact, we review the evidence in the light most favorable to the court's ruling and assume the court made findings that are supported by the record and buttress its conclusion. *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000).

We first address appellant's contention that the evidence regarding the marihuana growing on his property was unlawfully obtained. Appellant does not contend that the aerial reconnaissance or the warrantless entry onto his property by the officers was a violation of his Fourth Amendment rights. He argues, however, that Cowie and Stoddard committed a civil—not criminal—trespass when they walked from the Doss residence to the marihuana field. Thus, he urges that the evidence was obtained in violation of the law within the meaning of article 38.23(a). Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005) (statutory exclusionary rule). Appellant cites no authority to support his contention that the officers' conduct constituted a common law trespass under the circumstances shown here. In any event, a civil or common law trespass does not

4

constitute a violation of the law within the meaning of article 38.23(a). *Crowell v. State*, 180 S.W.2d 343, 347 (Tex. Crim. App. 1944) (applying predecessor statute); *Carroll v. State*, 911 S.W.2d 210, 221 (Tex. App.—Austin 1995, no pet.); *Delosreyes v. State*, 853 S.W.2d 684, 689 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). The trial court did not err by refusing to suppress the evidence that marihuana was growing on appellant's property pursuant to article 38.23(a).

Appellant contends that the warrantless search of his residence violated his Fourth Amendment rights because his consent to the search was not voluntary.[1] It was the State's burden to prove the voluntariness of appellant's consent by clear and convincing evidence. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). Whether consent to a search was voluntary is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973); *Reasor*, 12 S.W.3d at 818.

Appellant asserts that several factors undermine the finding that his consent to the search of his residence was voluntary. First, he urges that the officers falsely told him that his wife had consented to the search. The evidence shows, however, that Cowie told appellant only that his wife had given the officers permission to be on the property, a fact that is supported by Moseley's testimony. There is no evidence that appellant was told that his wife had consented to a search of their residence.

---

[1] The State argues that appellant failed to preserve this contention for review. It is true that appellant's primary contention at the hearing below was that the officers were trespassing on his property. Considering the record as a whole, however, we conclude that the voluntariness of his consent to the search of his residence was presented to the trial court and preserved for review.

5

Appellant asserts that he was told that if he did not consent to the search, the officers would get a warrant and search anyway. He also claims that he was threatened with harsh consequences if he did not consent. The only evidence supporting these assertions is appellant's own testimony, which the trial court was not required to believe. Appellant's claims were rebutted by the testimony of the officers and by the written consent form.

Appellant contends that his consent was involuntary because he was not told that he had a right to refuse. Although knowledge of a right to refuse is a factor to be taken into account, it is not a prerequisite to establishing a voluntary consent. *Schneckloth*, 412 U.S. at 249. Contrary to appellant's contention, the evidence reflects that appellant was told that he had a right to refuse his consent to the search. By his initials on the consent form, appellant acknowledged that he knew that he was not required to consent and that he would not be penalized if he did refuse.

Appellant complains of an alleged coercive atmosphere. He asserts that his wife and children had been "rounded up" by the police, and that he was "surrounded" by at least eight officers when he was asked to consent to the search of his residence. Appellant concedes, however, that there is no evidence that the officers brandished their weapons or engaged in any act of physical force while on his property. Appellant was not handcuffed or otherwise physically restrained when he gave his consent.

Finally, appellant urges that his consent to the search was tainted by unlawful police conduct. This is a reference to appellant's initial encounter with Cowie and Stoddard as the officers were walking toward the marihuana patch. Appellant incorporates his unsupported argument, discussed above, that the officers were trespassing. Appellant also asserts that he was unlawfully

6

arrested at this time. Cowie testified that he asked appellant to accompany the officers to look for the marihuana that had been seen growing on the property. We will assume for the sake of this opinion that, under the circumstances, this constituted a seizure of appellant's person within the meaning of the Fourth Amendment. *See California v. Hodari D.*, 499 U.S. 621, 625-26 (1991); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). We believe, however, that this seizure is best characterized as an investigative detention because appellant was not physically restrained or taken into custody. *See* Tex. Code Crim. Proc. Ann. art. 15.22 (West 2005) (defining arrest). We further believe that the detention was justified by reasonable suspicion: Retchloff had reported seeing marihuana growing on appellant's property, giving Cowie a reasonable basis for concluding that appellant was engaged in criminal activity. *See Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997) (discussing reasonable suspicion). Appellant challenges the credibility of Retchloff's claim to have identified the marihuana plants from the air, but that was an issue for the trial court.

Considering all the circumstances and giving proper deference to the trial court's determination, we hold that the State proved by clear and convincing evidence that appellant voluntarily consented to the search of his residence. The trial court did not err by overruling appellant's motion to suppress on this basis.

The judgment of conviction is affirmed.

7

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   July 24, 2007

Do Not Publish